UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN N. HUYNH,<br>Plaintiff,<br>v.<br>COUNTY OF SANTA CLARA,<br>Defendant. | Case No. 26-cv-03318-PCP<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>Re: Dkt. No. 12 |

Pro se plaintiff John Huynh asserts claims against the County of Santa Clara for allegedly discriminating against him based on disability in the administration of the county's general assistance program. Now before the Court is the county's motion to dismiss Mr. Huynh's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons below, the Court grants the county's motion and dismisses Mr. Huynh's complaint with leave to amend.

## BACKGROUND

Mr. Huynh is a resident of the county who has several medically documented disabilities, including post-traumatic stress disorder, mobility limitations, nutritional impairments, and executive dysfunction.[1] In 2025, Mr. Huynh applied for benefits from the county's general assistance program, for which he satisfies all income and residency requirements. In support of his application, he "provided [the county] with all medical documentation verifying [his] disability-related limitations," including a "[r]egistered [d]ietitian [n]utritionist verification confirming [his] medically necessary dietary modification" and a "physician certification confirming [his] disability and functional impairment."

[1] For the purposes of defendant's Rule 12(b)(6) motion, the Court assumes the truth of the facts alleged in plaintiff's complaint.

United States District Court
Northern District of California

United States District Court
Northern District of California

Mr. Huynh's application "requested reasonable modifications" that he alleges are "necessary [for him] to access [general assistance] benefits on equal terms" with county residents without disabilities. These modifications included a $200 monthly medical allowance for Mr. Huynh's specialized diet. The county denied his requested allowance, instead "impos[ing] a categorical $15 month cap." The county also refused to accept Mr. Huynh's registered dietitian verification as adequate documentation of his disability-related dietary needs, instead "asserting a 'physician-only' documentation requirement." In limiting Mr. Huynh to the program's categorical cap of $15 per month, the county "did not conduct an individualized assessment of [his] documented medical needs" or "provide written findings demonstrating that granting [his] requested modification would fundamentally alter the [general assistance] program."

Mr. Huynh then requested that the county provide "a $100 per month transportation allowance to access medical care and food resources." The county also rejected this request, "impos[ing] a reimbursement rule" for travel expenses "of $0.07 per mile." The county further "required proof that public transit was 'unavailable,'" even though Mr. Huynh had submitted medical documentation indicating that his disability prevented him from taking public transit. Mr. Huynh alleges that the county neither conducted an individualized assessment of his transportation needs nor engaged in an interactive process to assess his need for accommodation. In Mr. Huynh's words, the county "applied facially neutral rules in a manner that disproportionately burdened [him] because of his disability-related limitations."

After Mr. Huynh "asserted [his] ADA rights," his general assistance case "was placed into 'Banked GA Adult' status," and he consequently was not assigned a caseworker by the county. Although he wrote to supervisors in the general assistance program, he did not receive any written determination addressing his accommodation requests.

Mr. Huynh alleges that "[t]he cumulative effect of categorical caps [on monetary assistance], refusal to accept [his] documentation, failure to engage in [an] interactive process, and [the] lack of [an] assigned decision-maker denied [him] meaningful access to the [general assistance] program." And Mr. Huynh asserts that the county acted with knowledge of his needs and the inability of existing county policies to meet them, such that the county was deliberately

indifferent to the necessity of accommodation.

Mr. Huynh commenced this action against the county in April 2026, asserting claims for disability discrimination in violation of Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12132, and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794. The county now moves to dismiss his complaint for failure to state a claim.

**LEGAL STANDARD**

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to include a "short and plain statement of the claim showing that the pleader is entitled to relief." Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a complaint for failure to state a claim upon which relief can be granted. Dismissal is required if the plaintiff fails to allege facts allowing the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). To survive a Rule 12(b)(6) motion, a plaintiff need only plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

In considering a Rule 12(b)(6) motion, the Court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable" to the nonmoving party. *Rowe v. Educ. Credit Mgmt. Corp.*, 559 F.3d 1028, 1029–30 (9th Cir. 2009). While legal conclusions "can provide the [complaint's] framework," the Court will not assume they are correct unless adequately "supported by factual allegations." *Iqbal*, 556 U.S. at 679. Courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)).

Courts construe pleadings filed pro se more liberally than those drafted by lawyers, *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007), but "dismissal is proper when the complaint does not make out a cognizable legal theory or does not allege sufficient facts to support a cognizable legal theory," *Chubb Custom Ins. Co. v. Space Sys./Loral, Inc.*, 710 F.3d 946, 956 (9th Cir. 2013).

United States District Court
Northern District of California

## ANALYSIS

Mr. Huynh asserts claims under both Title II of the ADA and Section 504 of the Rehabilitation Act. Title II provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Title II thus "prohibits any public entity from discriminating against 'qualified' persons with disabilities in the provision or operation of public services, programs, or activities." *Tennessee v. Lane*, 541 U.S. 509, 517 (2004). Section 504 similarly provides that "[n]o otherwise qualified individual with a disability ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794 (1993). Because "[t]here is no significant difference in analysis of the rights and obligations created by the ADA and the Rehabilitation Act," other than the entities subject to each statute, "courts … appl[y] the same analysis to claims brought under both statutes." *Zukle v. Regents of Univ. of California*, 166 F.3d 1041, 1045 (9th Cir. 1999). To state a claim under either Title II or Section 504, a plaintiff must allege that (1) he is an individual with a disability who (2) is otherwise qualified to participate in or receive the benefits of a service, program, or activity that (3) is offered by a public entity (for Title II) or entity receiving federal funds (for Section 504), and (4) he was excluded from participation in or denied such benefits (5) solely by reason of his disability. *Weinreich v. L.A. County Metro. Transp. Auth.*, 114 F.3d 976, 978 (9th Cir. 1997).

Here, the county concedes that Mr. Huynh satisfies the first three elements—he is an individual with a disability who is qualified to receive benefits from the general assistance program offered by the county, which is a public entity receiving federal funds. But the county argues, and the Court agrees, that Mr. Huynh fails to plausibly allege the final two elements. That is, he does not allege discrimination (i.e., denial of benefits) based on disability.

### I. The caps on financial assistance did not discriminate against Mr. Huynh.

Mr. Huynh first challenges the county's refusal to grant him monetary assistance beyond the "categorical caps" imposed for all participants in the county's general assistance program,

which limits dietary allowances to $15 per month and transportation assistance to $0.07 per mile for travel for which public transit is unavailable. Mr. Huynh alleges that, as a result of his disabilities, he required $200 per month in diet-related financial assistance and $100 per month in transportation-related assistance. Thus, Mr. Huynh contends, the county's adherence to its generally applicable assistance caps deprived him of "meaningful access" to the general assistance program.

These claims fail because the county's alleged conduct does not constitute discrimination, i.e., denial of any available benefits. As the Ninth Circuit has explained, Title II "requires only that persons with disabilities have the opportunity to receive the same benefits as non-disabled [persons]" who are in otherwise "equivalent" circumstances. *Brown v. City of Los Angeles*, 521 F.3d 1238, 1242 (9th Cir. 2008) (quoting *Castellano v. City of New York,* 142 F.3d 58, 70 (2d Cir. 1998)). Thus, a public benefits program does not discriminate in violation of Title II or Section 504 where it provides a plaintiff with a disability with the same financial assistance or other benefits that are provided to all participants in that program. *See id.* at 1241–42; *see also Does 1–5 v. Chandler*, 83 F.3d 1150, 1155 (9th Cir. 1996). As Mr. Huynh's complaint and opposition make clear, that is the case here—he alleges that the county applied the same "categorical caps" and "fixed benefits limitations" to him that are applicable to all participants in the county's general assistance program. That the available benefits were insufficient to fully satisfy Mr. Huynh's dietary and transportation needs does not violate Title II or Section 504. These statutes "prohibit[] discrimination because of disability, not inadequate treatment for disability." *Simmons v. Navajo County*, 609 F.3d 1011, 1022 (9th Cir. 2010) (citing *Bryant v. Madigan,* 84 F.3d 246, 249 (7th Cir. 1996)), *overruled in part on other grounds by Castro v. County of Los Angeles*, 833 F.3d 1060, 1067 (9th Cir. 2016) (en banc). The county has no legal obligation to provide a particular level of (or any) financial assistance through its public benefits programs. *See Does 1–5*, 83 F.3d at 1155.

**II. The county's documentation requirements do not discriminate "by reason of … disability."**

Mr. Huynh next challenges the county's application of specific documentation requirements in administering its general assistance program. Specifically, he asserts that the

county violated Title II and Section 504 by requiring documentation of his dietary needs from a physician, rather than a registered dietitian, and requiring that he submit documentation that public transit did not service the routes for which he sought travel reimbursement. As Mr. Huynh acknowledges in both his complaint and opposition, these documentation requirements are "categorical" and apply to all participants in the county's general assistance program.

As an initial matter, nothing in the complaint states that Mr. Huynh was unable to provide such documentation or that his failure to provide such documentation impacted the amount of financial assistance he ultimately received. To the contrary, the complaint suggests that Mr. Huynh received the maximum amount of assistance available through the county's program for dietary and transportation needs. Thus, the complaint does not plausibly allege that the county's application of its documentation requirements "discriminated" against Mr. Huynh within the meaning of Title II or Section 504, as the documentation requirements did not operate to deprive him of the benefits available to other county residents. *See Brown*, 521 F.3d at 1241–42.

In any event, any discrimination resulting from the documentation requirements was not "by reason of disability." Where an entity denies benefits or otherwise sanctions an individual based on his failure to comply with a generally applicable requirement, the denial is not "by reason of disability" within the meaning of Title II or Section 504 unless the individual's disability prevented him from complying. In *Weinreich*, for example, the Ninth Circuit held that a certification requirement did not discriminate by reason of disability where the plaintiff's "inability to provide [the required] certification was due to his financial circumstances, not his medical disability." *See* 114 F.3d at 979. By contrast, the Ninth Circuit held in *McGary v. City of Portland* that a city ordinance requiring the plaintiff to clean his yard within a specified time after receiving a nuisance notice was discrimination by reason of disability because the plaintiff's disability made it impossible for him to complete the cleaning within the prescribed time. *See* 386 F.3d at 1265–66. Here, Mr. Huynh has not alleged that his disabilities rendered him unable to provide the documentation required by the county to receive benefits from the general assistance program. The complaint thus does not allege that any discrimination arising from the documentation requirements was by reason of Mr. Huynh's disabilities.

**III. Mr. Huynh's remaining theories fail.**

The remaining theories asserted in Mr. Huynh's complaint and opposition fail to state any cognizable claim under Title II or Section 504.

Mr. Huynh alleges that the county discriminated against him on the basis of his disability by placing his application in "banked" status and therefore failing to assign him a caseworker. But the complaint does not allege that this conduct impacted the amount of assistance that he received—as noted above, the complaint suggests that he received the maximum amount available. Nor does the complaint discuss whether other participants in the general assistance program were placed in "banked" status or assigned caseworkers. The complaint thus does not establish that the county treated Mr. Huynh any differently by placing him in that status. That is, the complaint does not show that this conduct constituted discrimination. *See Brown*, 521 F.3d at 1241–42. Even assuming that the conduct was discriminatory, the complaint does not plausibly allege that such discrimination was by reason of Mr. Huynh's disability. The sole basis for that assertion is the complaint's allegation that the county placed Mr. Huynh in "banked" status at some unspecified point "[a]fter [he] asserted ADA rights." But the bare fact that one event occurred after another does not, without more, establish a causal connection between the two. *See Huskey v. City of San Jose*, 204 F.3d 893, 899 (9th Cir. 2000).

Mr. Huynh also asserts that the county failed to grant reasonable accommodations to the policies governing the general assistance program or to engage in the interactive process necessary to identify such accommodations. But "[t]he duty to provide 'reasonable accommodations' under the ADA and the Rehabilitation Act arises only when a policy discriminates *on the basis of disability*." *Weinreich*, 114 F.3d at 978. Because Mr. Huynh has not plausibly alleged that any of the challenged policies discriminate by reason of disability, the complaint does not establish that the county had any obligation to engage in an interactive process or grant reasonable modifications. So the county's failure to do so did not violate Title II or Section 504.

**CONCLUSION**

For the foregoing reasons, Mr. Huynh's complaint fails to state a claim under either Title II of the ADA or Section 504 of the Rehabilitation Act. The Court therefore grants the county's

motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). In light of Mr. Huynh's pro se status, dismissal is with leave to amend. *See Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995) (instructing that pro se litigants generally must be given at least one opportunity to amend). Mr. Huynh may file an amended complaint within 30 days of this order. Failure to file an amended complaint by that deadline may result in dismissal of the action without further leave to amend.

**IT IS SO ORDERED.**

Dated: August 20, 2026

P. Casey Pitts
United States District Judge